# United States District Court
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TAMMY SIMPSON, | § | |
| | § | |
| *Plaintiff/Counter-Defendant*, | § | |
| | § | Civil Action No. 4:23-cv-00906 |
| v. | § | Judge Mazzant |
| | § | |
| AMERISAVE MORTGAGE CORPORATION, | § | |
| | § | |
| | § | |
| *Defendant/Counter-Plaintiff*. | § | |

### MEMORANDUM OPINION AND ORDER

Tammy Simpson sued her loan servicer, Amerisave Mortgage Corporation, in state court seeking verification of a debt. (Dkt. #3). Amerisave countersued for declaratory judgment, breach of contract, and judicial foreclosure. (Dkt. #1-3 at 6). Amerisave removed the case to this court, (Dkt. #1), and moved for summary judgment, (Dkt. #12). Simpson did not respond to that motion, so the court "presum[es] that [she] does not controvert the facts set out by [Amerisave] and has no evidence to offer in opposition to the motion." Loc. R. CV-7(d). Instead of filing a response, Simpson filed a notice that the court will treat as a motion to dismiss for lack of subject-matter jurisdiction. (Dkt. #21). Simpson's motion to dismiss, (Dkt. #21), will be denied and Amerisave's motion for summary judgment, (Dkt. #12), will be granted.

### BACKGROUND

#### I. Factual Background

Simpson executed a note promising to pay Amerisave $428,400 plus interest in return for a home-equity loan. (Dkt. #12-2 at 3–7). Simpson also granted Amerisave a security interest in the house through a security instrument. *Id.* at 8–28. Amerisave sent Simpson notices of default, intent

to accelerate, and acceleration for failure to repay the loan. (Dkt. #12-2 at 32–45). In response, Simpson sued Amerisave in state court, demanding that Amerisave produce the "original wet-ink signature promissory note" and questioning Amerisave's standing to foreclose. (Dkt. #3) (emphasis omitted). Amerisave counterclaimed for declaratory judgment, breach of contract, and judicial foreclosure. (Dkt. #4).

## II. Procedural History

In her state-court petition, Simpson demanded that Amerisave produce the original promissory note and proof that it was the holder of the note. (Dkt. #3). In response, Amerisave asserted that Simpson failed to state a claim, that it is the holder of the note, and that it is entitled to foreclosure. (Dkt. #4). Amerisave timely removed the case to this court. (Dkt. #1). Amerisave then moved for summary judgment on all claims and counterclaims. (Dkt. #12).

The court questioned its subject-matter jurisdiction sua sponte and ordered the parties to clarify Simpson's citizenship. (Dkt. #14). Simpson refused to confer with Amerisave to establish her domicile and instead filed a "Notice to Dismiss for Lack of Subject-Matter Jurisdiction." (Dkt. #21). Because Simpson is acting pro se, the court liberally construes her notice as a motion to dismiss under Rule 12(b)(1). *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## LAW

### I. Motion to Dismiss

A motion filed under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Federal

courts bear "the responsibility to consider the question of subject matter jurisdiction *sua sponte* . . . and to dismiss any action if such jurisdiction is lacking." *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985). The court's determination of its subject-matter jurisdiction generally "depends on the state of things at the time of the action brought," *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (quoting *Mullan v. Torrance*, 9 Wheat. 537, 539 (1824)), but an amended complaint may destroy jurisdiction, *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 24 (2025).

Lack of subject-matter jurisdiction may be found based on (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Id.*

A party may bring a Rule 12(b)(1) challenge in one of two ways: through a "facial attack" or through a "factual attack." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). A facial attack does not dispute the facts alleged in the complaint and requires the court to "look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Id.* Conversely, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). There is no presumption of truthfulness in factual challenges. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. May 1981); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). The party asserting jurisdiction

bears the burden of proving jurisdictional facts by a preponderance of the evidence. *Paterson*, 644 F.3d at 523.

## II. Summary Judgment

A summary-judgment movant bears the initial burden of demonstrating, by reference to record evidence, if necessary, that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if, under the governing substantive law, it could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the movant would bear the burden of proof at trial, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense" it seeks to prove. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But when the nonmovant would bear the burden of proof at trial, the movant may carry its initial summary-judgment burden by alleging that "the nonmovant has failed to establish an element essential to" its case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). The nonmovant may then avoid summary judgment by demonstrating the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Although the court must resolve all reasonable doubts in the nonmovant's favor, *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B Sept. 1981), "[c]onclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment," *Sanches v. Carrollton-Farmers Branch ISD*, 647 F.3d 156, 165 (5th Cir. 2011).

# DISCUSSION

## I. Jurisdiction

### A. Requirements of 28 U.S.C. § 1332(a)

Amerisave's notice of removal seeks to establish subject-matter jurisdiction under 28 U.S.C. § 1332(a) based on diversity of the parties' citizenships. (Dkt. #1 at 2). After the court ordered the parties to confer and specify Simpson's citizenship, Simpson filed a notice disclaiming United States citizenship. (Dkts. #18, 21). Simpson factually attacks the court's jurisdiction, disputing Amerisave's allegations of her Texas domicile and United States citizenship. (Dkt. #21). But despite her claims, Simpson is a United States citizen domiciled in Texas. Because Amerisave is a citizen of a different State, diversity is complete.

Section 1332(a) requires an amount in controversy in excess of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). That requirement is satisfied here. (Dkt. #1 at 5–6). Section 1332(a) also requires "complete diversity." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019). In other words, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Id.*

A natural person is domiciled, and therefore a citizen, where he or she has his or her true, fixed, and permanent home. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). "[A]n allegation of residency alone 'does not satisfy the requirement of an allegation of citizenship.'" *MidCap*, 929 F.3d at 313 (quoting *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984) (per curiam)); *see Texas v. Florida*, 306 U.S. 398, 424 (1939) (explaining that citizenship of a natural

5

person requires not only "[r]esidence in fact" but also "the purpose to make the place of residence one's home").

A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For that reason, "allegations regarding the citizenship of a corporation must set out the principal place of business of the corporation as well as the state [or states] of its incorporation." *Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 634 n.18 (5th Cir. 1985); *see Coal City Cob Co. v. Palm Enters., Inc.*, No. 3:18-CV-0123-N, 2018 WL 3475594, at *3 (N.D. Tex. July 18, 2018) (discussing the 2011 amendment to 28 U.S.C. § 1332(c)(1) and the demise of the forum doctrine).

In a removal case, "diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). In reviewing a factual challenge to jurisdiction, "a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." *Id.* "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Id.* (citation omitted).

A person does not lose her domicile unless she unequivocally abandons it or acquires a new one. *Id.* at 250; *see Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986). The party attempting to show a change in domicile assumes the burden of proving that change. *See Lew*, 797 F.2d at 751. But "[t]he

6

ultimate burden on the issue of jurisdiction rests with . . . the party invoking federal jurisdiction." *Coury*, 85 F.3d at 250.

### B. The *Coury* factors

In determining domicile, the court considers several factors: "the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his [or her] family." *Id.* at 251. The court should, when undertaking this examination, weigh all factors equally; no single factor is determinative. *Id.* Additionally, statements of intent, either to remain in a previous domicile or to establish a new one, are "entitled to little weight" if objective facts contradict them. *Id.*

Simpson argues that she is neither a Texas nor United States citizen. (Dkt. #18). To support her claim, she submits a letter from United States Citizenship and Immigration Services ("USCIS") in response to her Freedom of Information Act ("FOIA") request for her I-94 records and citizenship status. *Id.* Amerisave contends that Simpson is a Texas citizen and supports that argument with her original state-court petition, her recent bankruptcy petition, and the subject property's appraisal. (Dkts. #12, 15, 16, 17). The *Coury* factors support Amerisave's position.

#### 1. Exercise of civil rights

Petitioning the government for a redress of grievances is a quintessential exercise of civil rights. U.S. Const. amend. 1; *Bryant v. Military Dep't of Miss.*, 596 F.3d 678, 690–94 (5th Cir. 2010). The right to access the courts "is part of the right of petition protected by the First Amendment." *Cal.*

7

*Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972). For example, "filing a complaint in court is a form of petitioning activity." *McDonald v. Smith*, 472 U.S. 479, 484 (1985).

Simpson sued in a Texas court and listed her address in Little Elm, Texas, in the petition. (Dkt. #3). She also filed a Chapter 13 bankruptcy case in this court, No. 4:24-bk-40093 (E.D. Tex.). (Dkt. #17-1). In her bankruptcy petition, Simpson listed the same Little Elm, Texas, address. *Id.* at 2. She also indicated that she had lived in the district for at least 180 days before filing, *id.*, and that she had not lived anywhere else in the three years before filing, (Dkt. #17-2 at 38). Simpson made those affirmations under penalty of perjury. (Dkt. #17-1 at 8). And she admitted to owning and residing at the subject property. (Dkt. #17-2). The bankruptcy petition also indicates that Simpson was domiciled in Texas at the time she filed her state-court petition in this case and at the time the case was removed to this court. *See Veranda Assocs., L.P. v. Hooper*, No. H–11–4206, 2012 WL 602143, *1 (S.D. Tex. Feb. 23, 2012).

### 2. Licensing requirement and employment location

Other factors such as a realtor's license, location of employment, and place where she maintains a home further support a conclusion that Simpson is a Texas citizen for purposes of diversity jurisdiction. In her bankruptcy petition, Simpson listed herself as a self-employed realtor, (Dkt. #17-2 at 30), who also operated a business out of her Little Elm, Texas address, (Dkt. #17-1 at 4). In Texas, a licensed real estate agent must "be a citizen of the United States or a lawfully admitted alien." 22 Tex. Admin. Code § 535.51(b)(1)(A)(ii). Simpson does not claim that she was a lawfully admitted alien.

### 3. Homestead location

Simpson claims a homestead exemption on the Little Elm, Texas property. (Dkt. #17 at 6). To qualify for a homestead exemption under Texas law, Simpson must have an interest in a property

8

that is "designed or adapted for human residence," use it "as a residence," and "occup[y] [the property] as [her] principal residence." Tex. Tax Code § 11.13(j)(1). That further indicates that Simpson considers Texas her home.

    4. **USCIS letter**

As noted, Simpson points to the FOIA response letter stating that USCIS could not locate any I-94 records as proof that she is not a United States citizen. (Dkt. #18 at 1–2). But an I-94 is "issued to aliens who are admitted to the U.S., who are adjusting status while in the U.S. or extending their stay" and is attached "to the non-immigrant visitor's passport upon U.S. entry." U.S. Customs and Border Protection, *I-94 Automation*, CBP Publication No. 2116-1115, https://www.cbp.gov/sites/default/files/assets/documents/2016-Mar/i-94-automation-fact-sheet.pdf. "All persons need a Form I-94 except U.S. citizens, returning resident aliens, aliens with immigrant visas, and most Canadian citizens visiting or in transit." U.S. Citizenship and Immigration Services, *Form I-94, Arrival/Departure Record, Information for Completing USCIS Forms*, https://www.uscis.gov/forms/all-forms/form-i-94-arrivaldeparture-record-information-for-completing-uscis-forms. An I-94 therefore is not issued to a United States citizen. Simpson's lack of I-94 records suggests that she is a United States citizen, not the opposite.

    5. **Simpson's ineffective "disclaimer of citizenship"**

Simpson contends that her disclaimer of citizenship destroys diversity jurisdiction. (Dkt. #21 at 1). She "asserts her status as non-citizen and non-federal person, and a beneficiary of the private TAMMY YVETTE LEROY© TRUST, which is not subject to general federal jurisdiction under

9

Article III or 28 U.S.C. § 1332." *Id.* Simpson argues that because "[she] affirmatively disclaimed federal citizenship, the foundation for removal is unsupported and must fail." *Id.* She is mistaken.

Although a citizen has a right to renounce, *Nishikawa v. Dulles*, 356 U.S. 129, 139 (1958), courts do not recognize expatriation of citizens, even by foreign naturalization, without the express consent of the United States government. *Savorgnan v. United States*, 338 U.S. 491, 498 (1950). Congress has broad authority over the conditions and procedures that must be satisfied to expatriate. *Davis v. District Director, INS*, 481 F. Supp. 1178, 1183–84 n.8 (D.D.C. 1979).

The procedures are codified at 8 U.S.C. § 1481(a). That statute lists seven acts that, if "voluntarily perform[ed] . . . with the intention of relinquishing United States nationality," cause a United States national to lose that status. *Id.* The first five acts have that effect only "if and when the national thereafter takes up a residence outside the United States." *Id.* § 1483(a). The last two, renunciation during a time of war and conviction for treason or a similar offense, effect renunciation even if performed in the United States. 8 U.S.C. § 1481(a)(6), (7).

Simpson's alleged conduct fails to meet the requirements for renunciation because her actions took place in the United States and do not fall within the scope of § 1481(a)(6) or (7). Her disclaimer lists an address in Little Elm, Texas, (Dkt. #21 at 2), and does not allege that she took any action to relinquish her citizenship while outside the United States. *See Koos v. Holm*, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002) (noting that an inmate is free to travel to another country and renounce his citizenship after serving his sentence). Simpson cannot satisfy § 1481(a)(6) because she does not allege that her disclaimer was submitted to the proper designee

of, or approved by, the Attorney General. And she cannot satisfy § 1481(a)(7) because she does not allege that she has been convicted of treason.

* * *

Despite her sovereign-citizen disclaimers of interest and citizenship, Simpson cannot avoid this court's jurisdiction. *See Westfall v. Davis*, No. 7:18-cv-00023-O-BP, 2018 WL 2422058, *2 (N.D. Tex. May 4, 2018) ("So-called sovereign citizens argue that, though they are born and reside in the United States, they are their own sovereigns and are not United States Citizens . . . . However, these citizens cannot claim to be sovereigns independent of governmental authority while they simultaneously ask the judicial system to grant them recourse."). Amerisave has shown by a preponderance of the evidence that Simpson is a citizen of Texas. *See Paterson*, 644 F.3d at 523. Amerisave, a corporation incorporated and operating its principal place of business in Atlanta, is a citizen of Georgia. (Dkt. #1). Complete diversity of citizenship exists, so the court has jurisdiction under § 1332(a).

## II. Merits

Amerisave has demonstrated entitlement to summary judgment on both Simpson's claims and its own counterclaims. It has also demonstrated entitlement to an award of attorneys' fees and costs.

### A. Simpson's claims

Amerisave moved for summary judgment on Simpson's claims, arguing that it has standing to foreclose and that Simpson lacks a viable claim for relief. (Dkt. #12 at 5–6). It is correct.

Simpson's underlying state-court petition, which seeks verification of a debt and a court order compelling Amerisave to prove its standing to enforce the note, does not allege a valid cause of action. *See, e.g.*, *Kingman Holdings, L.L.C. v. U.S. Bank Trust*, No. SA-15-CV-1083-XR, 2016 WL

429804, *4 (W.D. Tex. Feb. 3, 2016); *Wells v. BAC Home Loans Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, *2 (W.D. Tex. Apr. 26, 2011). Simpson relies on the "show-me-the-note" theory to dispute Amerisave's status as her note holder and its ability to foreclose on her property. *See* (Dkt. #3). Supporters of the theory contend that "only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells*, 2011 WL 2163987, at *5.

The Fifth Circuit has repeatedly rejected that argument. *Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 593 F. App'x 265, 274 (5th Cir. 2014); *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253-54 (5th Cir. 2013); *Casterline v. OneWest Bank, F.S.B.*, 537 F. App'x 314, 316 (5th Cir. 2013). Under Texas law, "[t]he original, signed note need not be produced in order to foreclose." *Martins*, 722 F.3d at 253–54. "[T]here is simply no requirement in Texas that a foreclosing party produce the original, ink-signed note." *Kingman Holdings*, 2016 WL 429804, at *4. As such, Simpson's challenge to Amerisave's standing to foreclose fails, and she lacks a viable claim. Amerisave is therefore entitled to summary judgment.

### B. Amerisave's counterclaims

Amerisave also moves for summary judgment on its counterclaims for declaratory judgment, breach of contract, and judicial foreclosure. (Dkt. #4, 12). It is entitled to that relief.

#### 1. Declaratory judgment

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act "does not provide a federal court with an independent basis for exercising subject-matter jurisdiction." *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001). It just "enlarge[s] the range of

remedies available in the federal courts" without "extend[ing] their jurisdiction." *Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170–71 (5th Cir. 1990).

Before granting a request for declaratory relief, a court should determine: (1) "whether an 'actual controversy' exists between the parties"; (2) whether it has the authority to grant declaratory relief; and (3) whether it should "exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000); *see Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). An actual controversy is one that is substantial, immediate, and between parties with adverse legal interests. *Id.* at 896. In other words, "it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action." *HAVEN*, 915 F.2d at 171.

Amerisave asks for a declaration that it is the holder of Simpson's note and holds an interest in the property superior to Simpson's. (Dkt. #1-3 at 6). Amerisave's declaratory-judgment request is the appropriate vehicle to determine the validity of a lien. *See, e.g.*, *Khera Int. Inc. v. Wilmington Tr. Nat'l Ass'n*, No. 14-21-00404-CV, 2023 WL 2808170, at *5 (Tex. App.—Houston [14th Dist.] Apr. 6, 2023, no pet.); *DTND Sierra Inv., LLC v. HSBC Bank USA, Nat'l Ass'n*, No. 04-15-00657-CV, 2016 WL 3342327, at *2 (Tex. App.—San Antonio June 15, 2016, pet. denied); *Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 633 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Texas authorizes multiple actors to enforce negotiable instruments like home-equity notes and security instruments. *See* Tex. Bus. & Com. Code § 3.301; *PlainsCapital Bank v. Rogers*, 715 F. App'x 325, 330–31 (5th Cir. 2017). People entitled to an enforce include: "(i) the holder of the

instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, [and] (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)." *Id.* "The 'holder' of a promissory note is one who has a legal interest in it." *In re Collins*, 235 F. 937, 943 (E.D. La. 1914).

Also, mortgagees or mortgage servicers acting on behalf of a mortgagee may sell real property according to a "power of sale conferred by a deed of trust." Tex. Prop. Code §§ 51.002, 51.0025; *Gomez v. U.S. Bank, N.A.*, No. SA-12-CA-1209-FB, 2013 WL 12120412, *4 (W.D. Tex. May 22, 2013). Under Texas law, a "mortgagee" includes "the grantee, beneficiary, owner, or holder of a security instrument." Tex. Prop. Code § 51.0001(4). If the entity looking to foreclose is "a mortgagee by way of assignments, it need not establish holder status." *Gomez*, 2013 WL 12120412, *4.

Amerisave holds both the note and deed of trust. (Dkt. #12-2 at 3–31). It is the holder of a valid lien on Simpson's property and is entitled to foreclosure. *Id.*

### 2. Breach of contract

To state a breach-of-contract claim against Simpson under Texas law, Amerisave must prove: (1) the existence of a valid, enforceable contract between the parties; (2) that it performed or tendered performance on that contract; (3) that Simpson breached the contract; and (4) that it sustained damages as a result of the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). To show that a valid, enforceable contract exists, Amerisave must demonstrate (1) the existence of an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds on the essential terms of the contract (mutual assent), (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent

14

that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

Amerisave offers the home-equity note, security instrument, and deed of trust as evidence that there was a valid, enforceable contract between it and Simpson. (Dkt. #12-2 at 3–31). Simpson breached the contract by failing to maintain payments or pay off the loan when called due. (Dkt. #12-2 at 32–41, 44–45). Amerisave sustained damages by not receiving the funds owed and hiring attorneys to pursue foreclosure. (Dkts. #12-2 at 63–64, 12-4). As of June 6, 2024, the payoff amount of the loan was $453,715.96, with an additional $55.83 in interest accumulating per day. (Dkt. #12-2 at 63). After correcting for a miscalculation of the April 5, 2024, time entry, Amerisave also accrued $4,455 in attorneys' fees. (Dkt. #12-4). Simpson does not dispute any of the elements of Amerisave's breach-of-contract claim, (Dkt. #3), so summary judgment is proper.

### 3. Judicial foreclosure

Some courts applying Texas law have described judicial foreclosure as a remedy, rather than a cause of action, *see In re Erickson*, 566 F. App'x 281, 284 (5th Cir. 2014), and therefore declined to enter judgment on a stand-alone judicial-foreclosure claim, *HSBC Bank USA, N.A. v. Soria*, No. CV H-17-2174, 2018 WL 461112, at *3 n.1 (S.D. Tex. Jan. 17, 2018); *U.S. Bank Nat'l Ass'n v. Ross*, No. CV H-15-2385, 2017 WL 2730769, at *1 (S.D. Tex. June 26, 2017). Others construe a stand-alone judicial-foreclosure claim as one for breach of a contract or promissory note. *See Ocwen Loan Servicing, LLC v. Kingman Holdings, LLC*, No. 3:18-CV-1197-S, 2019 WL 3802167, at *5 (N.D. Tex. May 31, 2019) (collecting cases), *report and recommendation adopted*, No. 3:18-CV-1197-S, 2024 WL 2702664 (N.D. Tex. May 23, 2024). But according to the Fifth Circuit, "judicial foreclosure is its own cause of action under Texas law." *Priester v. Deutsche Bank Nat'l Tr. Co.*,

832 F.App'x 240, 248 (5th Cir. 2020) (per curiam); *see Maldonado v. CitiMortgage, Inc.*, 676 F.App'x 282, 284 (5th Cir. 2017) (per curiam).

Although home-equity loans must comply with the Texas Constitution, lenders are not "required to plead or prove compliance . . . as a prerequisite to asserting a claim for foreclosure." *Priester v. Long Beach Mortgage Co.*, No. 4:16-CV-449-ALM-KPJ, 2018 WL 1833255, *7 (E.D. Tex. Jan. 23, 2018). As the Supreme Court of Texas has explained, section 50(a) of the Texas Constitution, which governs home-equity loans, "does not create substantive rights beyond a defense to foreclosure, and there is no separate right of action." *Id.* at *12 (citing *Garfolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 478–79 (Tex. 2016)). Amerisave does not need to establish that the home-equity loan "complies with every constitutional provision." *Priester*, 832 F. App'x at 249. Instead, the burden is on Simpson to raise the affirmative defense of non-compliance, asserting that the constitutional requirements were not satisfied. *Id.*

In Texas, a party seeking judicial foreclosure "must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) plaintiffs are in default under the note and security instrument; and (4) plaintiffs received notice of default and acceleration." *PNC Bank, Nat'l Ass'n v. Ruiz*, No. 22-50584, 2023 WL 3340078, *2 (5th Cir. May 10, 2023). Amerisave has demonstrated each of those elements, and Simpson has failed to assert the affirmative defense of non-compliance.

### a. Debt

Amerisave's motion attaches a copy of the note, which is signed by Simpson and includes both her promise to make monthly payments and her agreement that, if she defaults, the holder of the note can accelerate the debt and require her to pay the entire outstanding balance. (Dkt. #12-2 at

3–7). The note shows that it was indorsed to Amerisave. *Id.* at 3. It is therefore payable to Amerisave. *See* Tex. Bus. & Com. Code § 3.205(a) (explaining that an instrument indorsed as "payable to an identified person . . . becomes payable to the identified person").

Amerisave's motion also attaches a copy of the security instrument and deed of trust, which identify Simpson as the borrower. (Dkt. #12-2 at 8–25, 30). The security instrument includes the borrower's agreement to "pay when due the principal of, and interest on, the debt evidenced by the Note." *Id.* at 11. The note, security instrument, and deed of trust demonstrate a financial obligation owed to Amerisave.

### b. Lien

The deed of trust creates a lien by establishing the lender's right to foreclose on the property if the borrower breaches the agreement, including the agreement to pay the debt evidenced by the note. *See Migura v. Dukes*, 770 S.W.2d 568, 569 (Tex. 1989) (explaining that a lien is "the right of recourse to sell specific property in satisfaction of a debt"). The lender identified in the deed of trust is Amerisave Mortgage Corporation. (Dkt. #12-2 at 30). Through its nominee, Amerisave assigned the rights and benefits secured by the deed of trust to itself. *Id.* Amerisave therefore has the right to foreclose on the lien in the event of default.

The property subject to the lien is described as

> Lot 22, in Block 9, of Frisco Hills Phase 1, an addition to the Town of Little Elm, Denton County, Texas, according to the Map or Plat thereof recorded in/under Clerk's File No. 2012-88, Map/Plat Records, Denton County, Texas.

(Dkt. #12-2 at 25). The street address of the property is 14205 Signal Hill Drive, Little Elm, Texas 75068. *Id.* at 11. Amerisave seeks to foreclose its lien on that property. (Dkt. #4 at 4–8).

### c. Default

Simpson is in default. (Dkt. 12-2 at 1–2). The then-Vice President of Amerisave, Kevin Mayers, states in his affidavit that, as of May 15, 2023, Simpson failed to make at least six payments. *Id.* at 58. A notice of default, dated January 9, 2023, demonstrates that Simpson owed payments dating back to December 2022. *Id.* at 32, 58. Simpson does not dispute her default or offer any evidence of payment. Instead, she attempts to disclaim her interest in the property. (Dkt. #18 at 5).

### d. Notice

Amerisave provided Simpson with notice of the default and note acceleration. (Dkt. #12-2 at 32, 44). Simpson does not dispute receipt of those documents. *See* (Dkt. #3).

### C. Amerisave's entitlement to attorney's fees

Texas authorizes the recovery of attorneys' fees on contract claims. Tex. Civ. Prac. & Rem. Code § 38.001(b)(8). To recover fees:

> (1) the claimant must be represented by an attorney;
>
> (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
>
> (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

Tex. Civ. Prac. & Rem. Code § 38.002.

The Fifth Circuit employs the "lodestar" method to calculate attorneys' fees. *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). First, the court "must determine the compensable hours from the attorneys' time records, including only hours reasonably spent." *Id.* Second, the court "must select an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Id.*; *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Third, to

produce the lodestar figure, the "number of compensable hours is then multiplied by the selected hourly rate." *Shipes*, 987 F.2d at 319. After calculating the lodestar amount, the court may adjust the award based on the factors stated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). But "there is a strong presumption that the lodestar is sufficient." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010).

Amerisave, represented by Hughes Watters & Askanase LLP, seeks to recover $4,473.00 in attorneys' fees and costs. (Dkt. #12-4). Section E of the note, (Dkt. #12-2 at 5), and paragraph nine of the security instrument, (Dkt. #12-2 at 14), provide for the relief Amerisave seeks. Specifically, the note warns that, in the event of loan acceleration, Amerisave "will have the right to be paid back by [Simpson] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees." (Dkt. #12-2 at 5). Also, the security instrument provides that, if Simpson breaches the agreement, Amerisave:

> may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including . . . (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(Dkt. #12-2 at 14) (cleaned up).

When Simpson breached the note and security instrument, Amerisave had a right to enforce those contracts and recover its reasonable attorneys' fees. Tex. Civ. Prac. & Rem. Code

19

§ 38.001(b)(8). Here, attorney Michael Weems represents Amerisave and states that he worked approximately 14.3 hours on this case. (Dkt. #12-4). Mr. Weems further states that his hourly rate was originally $290.00 and increased to $325.00, resulting in a total of $4,473.00 for his work on the case. *Id.* Correcting for a miscalculation of the April 5, 2024, time entry, the court finds that an award of attorneys' fees in the amount of $4,455 is reasonable. *Id.*

## CONCLUSION

It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Simpson's motion to dismiss (Dkt. #21) is **DENIED** and that her claims against Defendant Amerisave are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED**, **ADJUDGED**, and **DECREED** that Defendant Amerisave's motion for summary judgment, (Dkt. #12), is **GRANTED**. Defendant Amerisave is the holder of the home-equity note and security instrument. As of June 6, 2024, the amount due under the Note totaled $453,715.96, with a per diem of $55.83. Amerisave is entitled to judicial foreclosure of the property located at 14205 Signal Hill Dr., Little Elm, Texas 75068, and attorneys' fees in the amount of $4,455.

**IT IS FURTHER ORDERED**, **ADJUDGED**, and **DECREED** that all costs in this court be taxed against Simpson. Any relief not expressly granted herein is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 29th day of September, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE